UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WALLNER ALFREDO CARRERAS,

                              **Plaintiff**,

            -against-

**ANDREW M. SAUL,**

                              **Defendant.**

-----------------------------------------------------------------X

**19-CV-4474 (SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge.**

Plaintiff Wallner Carreras brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). He seeks judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). Defendant moved for judgment on the pleadings to uphold the Commissioner's determination and dismiss the case. Because the ALJ failed to develop the record, the Commissioner's motion is DENIED.

**I.  Background**

    **A.  Procedural History**

On September 21, 2015, Carreras filed applications for DIB and SSI. SSA Administrative Record ("Tr.") 94-105, 195-212. His claims were denied, and Carreras requested a hearing before an administrative law judge ("ALJ"), which was held on February 14, 2018. Tr. 7-54. On June 12, 2018, ALJ Suna issued a decision finding that Carreras was not disabled. Tr. 94-105. Carreras requested review by the Appeals Council, which was denied on March 19, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 111-18.

### B. Medical Evidence

Carreras alleged that he became disabled as of August 30, 2015, due to spinal problems and sciatica. Tr. 271. The Commissioner has provided a summary of the medical evidence contained in the administrative record. See Def.'s Br. at 2-18. Plaintiff has not opposed the Commissioner's motion. Having examined the record, the Court adopts the Commissioner's summary as mostly complete and accurate, with the following additions.

The Commissioner does not mention that in addition to a prescription for ibuprofen, Plaintiff was given a therapeutic injection at his September 23, 2015 visit to Urban Health Plan. See Tr. 328. Dr. Bechara's notes from October 16, 2015, also indicate that Carreras had used oxycodone "with no relief." Tr. 364. Dr. Bloch's January 2016 notes state that Carreras is "theoretically wheelchair bound" and that an epidural injection of his lumbar spine had been unsuccessful. Tr. 564.

### C. The Hearing Before the ALJ

Carreras testified at the hearing. He stated that he had completed the eleventh grade in school. Tr. 26. His prior employment included working at the front desk at a gym, stocking merchandise at a supermarket, preparing food at a café, and, most recently, repairing auto glass. Tr. 12-13, 15-18. Carreras was incarcerated for three years, from 2007 to 2010, and spent another three months in jail in 2011. Tr. 24-25. Carreras testified that he stopped working in 2013 or 2014 because of back pain and that he underwent back surgery in May 2016. Tr. 23. 27, 29. Since March 2016, Carreras has required the assistance of a home health aide to prepare meals, clean rooms, do laundry, and clean the bathroom. Tr. 23. He stated that he had used a wheelchair since 2015 because he could not walk due to leg pain. He stopped using the wheelchair three months after his surgery. Tr. 28. Carreras also testified that he used a cane for riding the train or

taking long trips because he could not walk evenly without it, but he acknowledged that a doctor never prescribed a cane for him. Tr. 29-30, 41-42. Carreras stated that he could sit for up to one hour at a time, stand continuously for thirty minutes, and walk up to two blocks at a time. Tr. 33.

Carreras testified that he has four children, the three youngest of whom were two, four, and five years old at the time of the hearing. Tr. 34-35, 38, 44. He stated that he sees his youngest three children almost every day after school, traveling three blocks to visit them at their home where they reside with their mother. Tr. 35, 43. He also stated that he takes his children to the park to play. Tr. 36. Carreras's oldest daughter sometimes visits him from Connecticut for the weekend. Tr. 44.

Carreras's aunt Yonaris Ferreriras also testified. Tr. 37-39. She stated that she works as Carreras's home health aide and helps him five days per week for five or six hours per day. She testified that she cooks, cleans and shops for Carreras. Tr. 37.

Irene Montgomery also testified as a vocational expert ("VE"). Tr. 47-53, 298-303. The ALJ presented a hypothetical of a person with Carreras's vocational profile who could perform sedentary work, limited to: (1) occasional climbing of stairs or ramps; (2) occasional balancing, stooping, kneeling or crouching; (3) no crawling or climbing of ladders, scaffolds or ropes; (4) no exposure to unprotected heights or moving mechanical parts; (5) occasional exposure to dust, odors, fumes and pulmonary irritants; and (6) jobs permitting him to be off task for five percent of the day in addition to normal breaks. Tr. 49. The VE testified that such a person could perform the jobs of electrical assembler, addresser, and document preparer. Tr. 50. According to the VE, there were 30,000 electrical assembler jobs, 40,000 addresser jobs, and 50,000 document preparer jobs in the national economy. Tr. 50.

**D. The ALJ's Decision**

The ALJ concluded that Carreras was not disabled within the meaning of the Act. The ALJ applied the five-step sequential evaluation process described in the Social Security Regulations for determining whether an individual is disabled. Tr. 96-104; see also 20 C.F.R. §§ 404.1520(a); 416.920(a). First, the ALJ found that Carreras met the insured status requirements of the Act through December 31, 2019. Tr. 96. Next, the ALJ found that Carreras had not engaged in substantial gainful activity since August 30, 2015, the alleged onset date. Id. The ALJ then found that Carreras had the following severe impairments: lumbar and cervical spine disorders; and status post L5 to S1 transforaminal lumbar interbody fusion. Id. The ALJ also found that Carreras had two non-severe impairments – an adjustment disorder and asthma. Tr. 97. The ALJ concluded that none of these impairments or combination of impairments met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Id.

The ALJ followed a two-step process to assess Carreras's symptoms and determine that Carreras has the residual functional capacity ("RFC") to perform sedentary work with no more than occasional exposure to dust, odors, fumes and pulmonary irritants, no more than occasional climbing of ramps, stairs, no climbing of ladders, ropes or scaffolds, no more than occasional balance, stopping, kneeling or crouching, no crawling, no exposure to unprotected heights or mechanical parts, and ability to be off task five percent of the time in an eight-hour work day. Tr. 98. At step one of the process, the ALJ must consider whether there is an underlying medically determinable physical or medical impairment that could reasonably be expected to produce Carreras's symptoms. Id. Once an impairment is shown, the ALJ must evaluate the intensity,

persistence, and limiting effects of the symptoms to determine the extent to which they limit his ability to do work-related activities. Id.

The ALJ described Carreras's medical history, noting that, despite Carreras's claims that he could not walk, he had responded well to treatment, including epidural shots and surgery, and was never prescribed an assistive device. Tr. 98-102. The ALJ focused on the statements of the medical expert ("ME") and one of Carreras's treating physicians that Carreras's pain reports were not supported by imaging of his lower spine. Id. In his 2015 consultative examination, Carreras claimed he could not walk but was able to stand without help, had full ranges of cervical and lumbar motion, minimally limited lower left extremity strength, and otherwise no neurological deficits. Id. In his visit to St. Barnabas Hospital ("St. Barnabas") in December 2016, Carreras complained of severe spinal pain, but reported that his pain decreased from a 10/10 to a 4/10 when he took pain relievers. During at least one doctor's visit, Carreras reported that he had not taken his pain medication, despite ongoing reports of debilitating pain. Though he used a cane, walker, brace, and motor scooter, none of these devices was prescribed. The ALJ noted that if Carreras was actually unable to walk, he would have been prescribed an assistive device by a doctor. Id. Moreover, Carreras said that the pain in his legs was completely resolved after surgery and that injections provided him up to 80% cervical pain relief. Tr. 101-02.

The ALJ also discussed opinion evidence in the record. The October 2015 opinion of Carreras's treating physician, Dr. Ali Guy, was given little weight. The ALJ stated that Dr. Guy's opinion was not supported by a record showing that Carreras's condition had improved after surgery and injections. The ALJ also noted that Carreras's treating physician had even noted that Carreras's reported pain was not consistent with his diagnostic report. Tr. 102. The ALJ gave the opinions of the consultative examiner, agency medical consultant and ME "some weight." Id.

The ALJ concluded that, though his medically determinably symptoms could be reasonably expected to cause the alleged symptoms, Carreras's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and record evidence. Tr. 100-01. Accordingly, the ALJ ruled that Carreras could perform sedentary work with limitations and was therefore not disabled.

## II.     Legal Standard

### A.  Standard of Review

In reviewing the Commissioner's decision, a court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision may be set aside only if it is "based upon legal error or is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

### B.  Definition of Disability

A claimant is disabled under the Social Security Act if he demonstrates an "inability to engage in any substantial gainful activity" because of "any medically determinable physical or medical impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period" of at least a year. 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A).

The Social Security Administration has established a five-step process that ALJs apply to determine if an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The steps are followed in a set order. Id.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled ... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

Selian v. Astrue, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012)) (alterations in original). The claimant bears the burden of proof in the first four steps, and the Commissioner bears the burden in the last. Id. at 418.

### III. The ALJ Failed to Properly Develop the Administrative Record

"Social Security proceedings are inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 110-11 (2000). Accordingly, even where a claimant is represented by counsel, an ALJ has an affirmative duty to develop the administrative record and obtain a claimant's complete medical history. See Pratts, 94 F.3d at 37. Remand is appropriate where this duty is not discharged. Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 262 (S.D.N.Y. 2016) (citing Moran v. Astrue, 569 F.3d 108, 114-15 (2d Cir. 2009)).

The ALJ failed to discharge his duty to develop the record. The ALJ afforded the state medical agency consultant's opinion "some weight" because it was "supported by a record showing" that despite some improvement, Carreras still had mild to moderate physical limitations "post lumbar surgery." Tr. 102. But the record does not include any evidence of the

7

surgery, such as operative or pre-operative notes. See Commissioner's Mot. 11 n. 8 ("The record contains no evidence of treatment for the seven-month period between February 2016 and September 2016, including no evidence of the reported May 17, 2016 back surgery[.]"). The absence of any evidence of the lumbar surgery in the record indicates that the ALJ failed to develop the record and obtain Carreras's complete medical history before rendering his decision. See Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016).

This gap is even more significant because the ME – whose opinion was also given "some weight" – noted "unresolvable inconsistencies" in the record. Tr. 687. The ME noted that "multiple pages throughout [the record] state surgery was performed 5/7/16." Id. But the ME questioned "[w]hy . . . surgery [was] performed at this level if it is already sacralized? If surgery was actually performed at L4-5 as suggested by radiographs, why was it performed at that level for S1 radiculopathy?" Id. "NOTE," the ME continued, "there is no operative report or preoperative workup in the exhibits to help resolve these issues." Id. Because the record did not reflect evidence of "neuro anatomic distribution of pain in the lower extremities, abnormal neurologic findings such a[s] atrophy or nerve root specific motor weakness of sensory deficits, the "reason for surgery [was] unknown." Tr. 687-88. The ALJ's decision describes the ME's concern but goes on to rely on her opinion without resolving the confusion regarding Plaintiff's surgery. Tr. 100 ("Dr. Rohr also wrote that there was no operative report or pre-operative workup in the exhibits to help resolve these issues.").

Where there are "obvious gaps in the administrative record," the agency is required to affirmatively seek out additional evidence. Craig, 218 F. Supp.3d at 267-68 (quoting Euspei v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014)) (internal quotation marks omitted). The absence of any operative or preoperative report evidencing Carreras's surgery or explaining why it was

performed qualifies as an "obvious gap" because of its relevance to the ALJ's credibility determination. The ALJ determined that Carreras's subjective symptoms were inconsistent with the record evidence. Tr. 98-102. For instance, the ALJ found that Carreras's claim that he experienced severe back pain was inconsistent with his reports that his level of back pain had diminished post-surgery and that his leg pain was "completely resolved." Tr. 100. But the ALJ also relied on the ME's report questioning whether Carreras ever had the surgery he alleged and noting that there were "extensive inconsistencies in [Carreras's] reported medical history." Tr. 100-01.

An ALJ has authority to evaluate a claimant's testimony and render an independent judgment regarding the true extent of the symptoms alleged. Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999). In making this determination, the ALJ is required:

> (1) to consider "all of the available evidence," including [plaintiff's] own statements, the observations and opinions of [plaintiff's] treating physicians, and the observations and opinions of other medical professionals who examined [plaintiff] or reviewed his records; and (2) to weigh [plaintiff's] statements against the objective evidence, including medical records, of his symptoms.

Whipple v. Astrue, 479 F. App'x 367, 370 (2d Cir. 2012) (quoting 20 C.F.R. § 404.1528(c)(1), (4)). If the ALJ's findings are "supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Craig, 218 F. Supp. 3d at 263 (citation and internal quotation marks omitted). The ALJ's findings must be set forth with sufficient specificity to allow for review of the record. See id.

In assessing Carreras's credibility, the ALJ credited both medical evidence that Carreras had improved since surgery and the ME's opinion that Carreras's medical records so were riddled with inconsistencies that it was unclear whether and why he had surgery at all. It cannot be the case that Carreras had both recovered since surgery and that he did not have the alleged

9

surgery. Without evidence of Carreras's lumbar surgery, such as operative or preoperative notes, the Court is unable to review the ALJ's credibility determination, weighing Carreras's subjective statements against the objective evidence in the record. To the extent that Carreras's surgery was relevant, the ALJ should have sought out records evidencing: (1) that the surgery <u>actually</u> happened; (2) the exact nature of the surgery; and (3) the reason for the surgery.

The Commissioner argues that, despite a seven-month gap in the record and the absence of any evidence of Carreras's back surgery, the agency fulfilled its duty to develop the record by making appropriate efforts to obtain Carreras's records. <u>See</u> 42 U.S.C. § 423(d)(5)(A). It is true that the ALJ made multiple requests for records to Carreras's medical providers and contacted the treatment sources that Carreras identified. <u>See</u> Tr. 317-478 (records from St. Barnabas, Medalliance Medical Health Services, Lincoln Medical Center, Montefiore Medical Center and Urban Health Plan), 493, 548-49, 589-654 (additional records from St. Barnabas), 555-79 (additional records from Medalliance Medical Health Services). Moreover, it is true that Carreras's counsel stated at the hearing that the record was complete. Tr. 11.

But the ALJ has an affirmative duty to complete the record and to ensure that he possesses a claimant's complete medical history. <u>See</u> <u>Rosa</u>, 168 F.3d at 79-80. Though he need not "resolve every conflict in the record," the ALJ is required to set forth the "crucial factors in any determination . . . with sufficient specificity" and to "adequately explain his reasoning in making the findings on which his ultimate decision rests[.]" <u>Calzada v. Astrue</u>, 753 F. Supp. 2d 250. 268-69 (S.D.N.Y. 2010). Here, the ALJ not only failed to obtain records of Carreras's lumbar surgery but also declined to explain or even acknowledge this obvious gap in the record. It is the Commissioner's job, not the Court's, to resolve evidentiary conflicts. <u>Id.</u> (citing <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002)). Before discrediting Carreras's subjective

complaints, the ALJ should have obtained records evidencing the surgery. See Cleveland v. Apfel, 99 F. Supp. 374, 380 (S.D.N.Y. 2000). If no such records existed, the ALJ had a duty to explain this inconsistency in his opinion.

## CONCLUSION

The Commissioner's motion is denied and the case is remanded to the Commissioner for further development of the record. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 20, close this case, and mail a copy of this Opinion & Order to the *pro se* Plaintiff.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　SARAH NETBURN
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED:　　　August 10, 2020
　　　　　　　New York, New York